UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | No. 14-CR-32-DCR-REW |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| EDWARD A. BARKER, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Edward A. Barker, by counsel, moves to suppress evidence obtained from his residence pursuant to a state search warrant.[1] DE #14 (Motion). In support of the motion, Barker makes two arguments. *See* DE #14-1 (Memorandum in Support of Motion to Suppress). First, Barker argues that the warrant affidavit failed to establish a sufficient nexus between the evidence sought and his residence, the place to be searched. *Id.* at 2-3. Second, Barker argues that the affidavit failed to provide adequate information from and about the referenced confidential informant ("CI"). *Id.* at 4-5. Barker contends that because of these deficiencies, the affidavit lacked sufficient information to support a probable cause finding.

The United States filed a response in opposition to the motion. DE #17 (Response). Defendant replied. DE #18 (Reply). Because, as the parties agree, the motion calls for "four corners" review of the warrant documents, the Court did not hold

---

[1] The motion has been submitted to the undersigned for a recommendation pursuant to the District Judge's Standing Referral Order for criminal actions. DE #2 (Standing Referral Order).

an evidentiary hearing.[2] The Court did, however, receive oral argument at the conclusion of briefing. *See* DE #20 (Minute Entry).

Having heard the parties' arguments and reviewed the briefs submitted by counsel, along with the subject warrant and affidavit, the Court recommends that the District Court **DENY** the motion to suppress. A substantial basis supported warrant issuance. Further, even if probable cause did not support the warrant, the exclusionary rule would not apply under current standards.

I.  **Background**

On the morning of May 18, 2011, Detective Arthur R. Lacy with the Stanton Police Department submitted two affidavits seeking distinct search warrants for two buildings located at 1450 Nada Tunnel Road, Stanton, Kentucky 40380. DE ##17-1 and 17-2 (Warrant Affidavits). The first affidavit asked for a warrant to search a two story building on the property. DE #17-1. The affidavit particularly described the building as follows: "A two story building in which the first floor is commonly used as a garage and the second floor commonly use[d] as residence. The first floor has wood siding and the second floor has light brown vinyl siding. The top floor also has a porch on the East side of the residence." *Id*. The second affidavit asked for a warrant to search a "gray mobile home with a wooden porch." DE #17-2. Both affidavits indicated that Detective Lacy wanted to search the buildings for illegal drugs, drug paraphernalia, cash, and other indicia of drug trafficking. DE ##17-1 and 17-2.

In support of his request for a warrant to search the two-story building, Affiant Lacy stated that on May 17, 2011, he received information from Kentucky State Police

---

[2] *See* DE #16 (Minute Entry). Assessment for probable cause encompasses only the warrant application materials. *See United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

2

Confidential Informant #10-2017 "[t]hat Edward Barker was knowingly trafficking illegal drugs from" the residence. DE #17-1. According to Lacy, "CI informed this detective that Edward Barker traffics and stores drugs at" the two-story building. *Id.* Additionally, Detective Lacy indicated that he conducted an independent investigation, which involved a controlled purchase of drugs from Barker by the CI. *Id.* Lacy described the transaction as follows:

> That on Tuesday May 17, 2011 CI was given recording equipment and money to make a control purchase of drugs from Edward Barker. CI traveled to 1450 Nada Tunnel Road in Stanton, KY also known as the residence of Edward Barker and asked to purchase drugs. That Edward Barker agreed to illegally sell CI drugs and walked out of this building and left the CI on the second floor. That CI walked out to the porch on the second floor and observed Edward Barker walked to a mobile home, went inside and exited it. That Edward Barker then walked back to the second floor of this building and illegally trafficked drugs to CI. Then CI drove back and met with this detective and returned drugs and recording device.

*Id.*

Detective Lacy's affidavit for a warrant to search the gray mobile home provided similar information. *See* DE #17-2. In that affidavit, Lacy stated that he received information on May 16, 2011, from the same CI, CI #10-2017, "[t]hat Edward Barker was selling illegal drugs from . . . 1450 Nada Tunnel Rd." and "[t]hat Edward stores and sells drugs at the mobile home and the building/residence beside of the mobile home" on the property. *Id.* With respect to Detective Lacy's independent investigation, the mobile home affidavit first described a controlled purchase of drugs from Barker on May 16, 2011. *Id.* Lacy stated that on May 16,

> the CI was given recording equipment and money to purchase illegal drugs from Edward Barker. The CI traveled to Edward Barker[']s residence and made contact with Edward Barker and asks to purchase drugs. Edward Barker and the CI then walked to the mobile home and

> Edward went inside and then came back with the drugs and sold them to
> the CI. The CI then returned with the drugs and the recording equipment.

*Id.* Lacy did not mention this May 16 transaction in the affidavit for the two-story residence. The mobile home affidavit then went on to describe the May 17 transaction between Barker and the CI that was included in the two-story building affidavit. *Id.*

Lacy simultaneously signed and submitted the applications, and Judge Frank A. Fletcher, Circuit Judge for Breathitt, Powell, and Wolfe Counties, signed both warrants at 8:44 a.m. on May 18, 2011. DE ##17-3 and 17-4 (Warrants). Detective Lacy executed the warrants the same day. *See* DE ##17-3 and 17-4. The warrant return sheets indicate that law enforcement seized several items from the two-story building, including pill bottles, pills, a bag containing a green leaf substance, and eleven miscellaneous notes recording suspected drug transactions. DE #17-3. Additionally, law enforcement recovered several items of evidence from the gray mobile home, including more pill containers, pills, a considerable amount of cash, and a small ammunition can containing several bullets. DE #17-4.

On April 10, 2014, a federal grand jury in this District indicted Barker for 2011 conduct on charges of oxycodone trafficking, possession of a firearm by a convicted felon, and a related forfeiture allegation. DE #1 (Indictment). Specifically, Counts 1 through 4 charge Barker with distributing a quantity of pills containing oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). DE #1. The criminal conduct allegedly occurred in Powell County on July 22, 2010, September 2, 2010, September 23, 2010, and February 1, 2011, respectively. *Id.* Count 5 also charges a § 841(a)(1) violation, alleging that Barker possessed with intent to distribute oxycodone in Powell County on May 18, 2011, the date of warrant issuance and execution. *Id.*

4

Count 6 charges that Barker, having been convicted of a felony, possessed a firearm in Powell County on May 18, 2011, in violation of 18 U.S.C. § 922(g)(1). DE #1. The forfeiture allegation seeks to forfeit to the United States Barker's interest in a certain handgun and associated ammunition. *Id.*

Barker was taken into federal custody on the Indictment on April 16, 2014. *See* DE #9 (Executed Arrest Warrant). The Court conducted his initial appearance and arraignment the next day. *See* DE #6 (Minute Entry). Thereafter, Barker timely filed the motion to suppress pending before the Court. Barker challenges only the warrant to search the two-story building on the 1450 Nada Tunnel Road property. *See* DE #14-1. Barker represents that this building serves as his residence.[3] *Id.*

## II. Analysis

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST., amend. IV. Probable cause consists of "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *See United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). To determine probable cause, an issuing magistrate must examine the totality of the circumstances and find "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *See United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)).

When evaluating whether a warrant application presented probable cause, a reviewing court must accord "great deference" to the issuing judicial officer's determination. *See United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). Such

---
[3] Barker states that the gray mobile home on the property is his mother's residence. *See* DE #14-1; DE #14-2 (Aerial Photograph). He identifies a third building on the property as his wife's residence. *See* DE #14-1; DE #14-2.

deference ensures than "an issuing [judge's] discretion [will] only be reversed if it was arbitrarily exercised." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). The reviewing court must uphold the issuing judge's probable cause determination if a "substantial basis" existed for the judge to conclude "that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 103 S. Ct. 2317, 2331 (1983); *Allen*, 211 F.3d at 973.

Additionally, line-by-line scrutiny of the supporting affidavit is inappropriate, *see United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citing *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)), and the reviewing court must limit its analysis to the "information presented in the four corners of the affidavit." *Id.* at 306; *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). When the search at issue occurred pursuant to a warrant, the defendant has the burden of establishing a prima facie case that the search was illegal. *United States v. Murrie*, 534 F.2d 695, 697-98 (6th Cir. 1976); *see also United States v. Franklin*, 284 F. App'x 266, 275 (6th Cir. 2008) (Clay, J., dissenting).

### A. The warrant affidavit established a sufficient nexus between the evidence sought and the place to be searched.

In challenging the warrant for his residence, Barker first argues that Detective Lacy's affidavit failed to establish a sufficient connection between the drug trafficking evidence sought and the two-story building. *Id.* at 2- 3. Barker notes that, according to the affidavit, Barker had to leave the two-story residence and go to the mobile home before concluding the drug transaction with the CI, back in the residence, on May 17, 2011. *Id.* at 3; *see* DE #17-1. Barker thus contends that the affidavit does not set forth a fair probability that evidence of a crime would be found at his residence, as opposed to

the trailer on the property. DE #14-1, at 3. Barker highlights the fact that he allegedly left the CI alone in the two-story home when he went to the trailer, implying that a trafficker would not have permitted the CI to remain in the residence unaccompanied if drugs and other evidence of drug trafficking were located there. *See id.* Movant claims that "while there *may* be the requisite nexus between the trailer and evidence of drug trafficking, such a nexus does not exist . . . with regard to the residence." *Id.* (emphasis in original).

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (internal quotation marks omitted). Stated otherwise, an affidavit in support of a search warrant must sufficiently demonstrate the existence of a "nexus between the place to be searched and the evidence sought." *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)); *see also United States v. Frazier*, 423 F.3d at 532 ("'The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.'") (quoting *Zurcher v. Stanford Daily*, 98 S. Ct. 1970, 1976-77 (1978)). Further, "[i]t is settled that where . . . a structure is divided into more than one unit, probable cause must exist for each unit." *United States v. Gonzalez*, 697 F.2d 155, 156 (6th Cir. 1983) (citation omitted).

The Sixth Circuit has held that "the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *Frazier*, 423 F.3d at 533. The Sixth Circuit recognizes, however, "that in the

7

case of drug dealers, evidence is likely to be found where the dealers live[.]" *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (quotation omitted); *see also Frazier*, 423 F.3d at 530 (citing *Jones*); *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002) (citing cases). Accordingly, the Sixth Circuit has upheld warrant-based searches of purported drug dealers' residences where, arguably, the known connection between the residence to be searched and drug trafficking activity is tenuous. *See Miggins*, 302 F.3d at 393-94 (finding probable cause to search the defendant's apartment upon a showing that the defendant previously had been convicted of narcotics offenses and upon a clear showing of defendant's involvement in a drug transaction set to occur in a separate location); *see also United States v. Contreras*, 2003 WL 22004161, at *5-*7 (E.D. Mich. Aug. 8, 2003) (summarizing several Sixth Circuit cases, including *Miggins*). Indeed, sufficient evidence of a target's current drug dealing suffices as a basis for a search of the target's residence. *See United States v. Feagan*, 472 Fed. App'x 382, 392 (6th Cir. 2012) ("It is well established that if there is probable cause to suspect an individual of being an ongoing drug trafficker, there is a sufficient nexus between the evidence sought and that individual's home.") (citation omitted).

Here, the connection between Barker's residence and his alleged drug trafficking activity is not tenuous. According to Detective Lacy's averments, the CI purchased drugs from Barker **in** the two-story building. Although Barker left the residence for a short amount of time, presumably to obtain drugs from the nearby mobile home, the exchange of drugs and money occurred in the two-story building itself. Where an affidavit avers that a confidential informant participated in an illegal drug transaction on the premises to be searched, the affidavit clearly establishes a nexus between the place to be searched and

the evidence sought. *See United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009) (finding a sufficient nexus where the confidential informant witnessed a drug deal on the premises specified in the search warrant); *United States v. Moore*, 661 F.3d 309, 314 (6th Cir. 2011) ("Nexus is usually an issue when the criminal activity was not witnessed in the residence. . . . The affidavit stated that the CI had been at the residence and had seen a drug sale there. A sufficient nexus existed."). Even if Barker stored drugs in the mobile home, the fact that the sale occurred in the two-story building suggests that other evidence of drug trafficking, such as drug paraphernalia and buy money, would be found in Barker's residence. As noted, Detective Lacy's affidavit sought permission to search the residence not just for illegal drugs, but also for drug paraphernalia, cash, and other records and evidence of drug activity. Besides this direct tie, as an active dealer, Barker's role alone supplies an inference nexus under Sixth Circuit law. Therefore, the Court finds that the information in the affidavit gave the judge issuing the search warrant reasonable grounds to believe that there was a fair probability evidence of drug trafficking would be located in the two-story building. Barker's challenge to the warrant based on an alleged insufficient nexus fails.

### B. The warrant affidavit is not constitutionally deficient for failing to provide information about the informant's reliability.

Barker next argues that Detective Lacy's affidavit fails to provide adequate information concerning the CI. DE #14-1, at 4. Citing *Illinois v. Gates*, 103 S. Ct. 2317 (1983), Barker notes that the veracity and credibility of a confidential informant are important factors in the probable cause equation. DE #14-1, at 4. He argues, however, that Lacy's affidavit gives no information whatsoever about the identity or reliability of the informant. *Id.* at 5. According to Barker, "[t]he affidavit accuses Mr. Barker of

9

trafficking in drugs, but fails to set forth what type of drugs they are, the amount that was recovered from the CI, whether the suspected drugs were field tested, or any other indication which might then allow the magistrate to determine, independent of the say-so of the officer, whether probable cause exists." *Id.* He therefore claims that the issuing judge was "merely acting as a rubber stamp for police when" he signed the warrant. *Id.* at 4.

In *Gates*, the Supreme Court rejected the rigid "two-pronged test" lower courts had developed to implement earlier Supreme Court decisions regarding the evaluation, as part of the probable cause analysis, of information supplied by anonymous tips or confidential informants. *See Gates*, 103 S. Ct. at 2327-2332; *see also United States v. Allen*, 211 F.3d 970, 972 (6th Cir. 2000). Under the two-pronged test, before an affidavit could rely upon information from a confidential source, the affidavit had to (1) adequately reveal the "basis of knowledge" of the source and (2) provide facts sufficiently establishing either the "veracity" of the source or the "reliability" of the source's information in the particular case. *Gates*, 103 S. Ct. at 2327. The *Gates* Court recognized that "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Id.* at 2328. The Court found, however, that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 2332. In other words, the Court "reaffirm[ed] the

totality-of-the-circumstances analysis that traditionally has informed probable cause determinations." *Id.*

In challenging warrant validity, Barker relies heavily on the Sixth Circuit's decision in *Allen*. *See* DE #14-1, at 5. In that case, the Sixth Circuit considered the sufficiency of a warrant affidavit identifying the confidential informant as "a responsible and credible citizen of the county and state, who I know to be a responsible and credible citizen because, I have known said informant for 5 years and said informant has given me information about individuals involved in criminal activity in the past that has proven to be reliable." *Allen*, 211 F.3d at 971. The affidavit further indicated that the affiant had disclosed the informant's name to the issuing judge, and that the informant had advised the affiant that he had been on the premises to be searched within the last seventy-two hours and observed the target suspect in possession of illegal drugs, including cocaine. *Id.* at 971-972. The Sixth Circuit upheld the probable cause determination, finding that "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate *may* believe that evidence of a crime will be found." *Id.* at 976 (emphasis in original).

The Court must agree with Barker that, unlike in *Allen*, Detective Lacy did not attest to the CI's reliability in detail, nor is there any indication that he identified the CI to the issuing judicial officer. However, there are also facts in Barker's case not present in *Allen* that weigh in favor of a determination of probable cause. Namely, Detective Lacy averred that the CI engaged in a controlled drug buy with Barker the day before the search warrant issued. Thus, the holding in *Allen*, except as to its overall principles, is of

limited utility in making a probable cause determination in a case with a distinct set of facts.

With that said, the *Allen* court did make some observations that are significant in evaluating whether probable cause supported the warrant to search the two-story building on the Nada Tunnel Road property. The *Allen* court noted that the Sixth Circuit "has upheld a district court's finding that no probable cause existed when a warrant was issued based on an affidavit whose information came from an anonymous tip sparse in detail and wholly uncorroborated by the police." *Id.* at 976 (citing *United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993)). The court explained that in "the absence of any indicia of the informants' reliability[,]" the Courts of Appeals "rightly [have] insisted upon substantial independent police corroboration[.]" *Id.* The *Allen* court further cited with approval a Seventh Circuit decision finding that "a merely conclusory statement of the affiant's belief in an informant's past credibility, unsupported by further detail, failed to pass muster[.]" *Id.* at 975 (citing *United States v. Reddrick*, 90 F.3d 1276, 1280 (7th Cir. 1996)). According to the court, the Seventh Circuit's "result complies with *Gates*'s requirement that the information presented to the magistrate in the affidavit be sufficient to allow 'that official' to assess probable cause independently, and not merely to rubber-stamp the affiant's conclusion." *Id.* at 975-76 (citing *Gates*, 103 S. Ct. 2317).

Here, although Detective Lacy did not attest to the CI's credibility or reveal the informant's name to the issuing judge, it is reasonably clear that Lacy was aware of the CI's identity, as Lacy set up a controlled drug buy between the informant and Barker. Further, the CI was registered with and had a KSP CI number. Thus, Lacy's source was confidential, but inferentially not anonymous. *See Dyer*, 580 F.3d at 391 ("'The

statements of an informant . . ., whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source.'") (quoting *United States v. May*, 399 F.3d 817, 824-25 (6th Cir. 2005)). Further, the averments concerning the controlled buy provide corroboration of the CI's information that Barker engaged in drug trafficking. The affidavit states that the CI was given recording equipment and money to make a controlled purchase of drugs from Barker. The affidavit then describes the transaction, which occurred the day before the warrant issued, and avers that, following the buy, the CI drove back, met with Lacy, and returned drugs and the recording device. The Court finds this corroboration sufficient to allow the issuing judge to make an independent assessment of probable cause. Additionally, the Court notes that Detective Lacy did not rely on boilerplate language, *see United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996), or a form affidavit with no particularized detail, *see Moore*, 661 F.3d at 315 (Moore, J. concurring). The circumstances, viewed in totality as *Gates* requires, support issuance of the search warrant for Barker's residence.

Admittedly, it is unclear how the affiant knew the details included in the affidavit regarding the drug transaction. The reviewing judge would have had to infer that the CI either provided these details to Detective Lacy orally, perhaps in a debriefing following the drug buy, or that Lacy learned the details through later review of a recording made by the CI.[4] Further, the affiant does not identify the type of drugs Barker allegedly

---

[4] Of course, this requires the judge to make the further inferences that the CI actually recorded the transaction and that the recording equipment functioned properly. The Court thinks this inference rational, if not compelled. The device surely served a purpose in the tale, and the CI returned the recorder with the purchased drugs. A monitoring or recording device also, by definition, has a corroborative impact psychologically on the CI

trafficked, nor does it indicate that the CI identified drug type. The reviewing judge would have had to infer that Lacy, based on his fifteen plus years of experience in law enforcement, recognized the drugs as illegal when the CI "returned drugs" to him following the controlled drug purchase. *See* DE #17-1.

Ultimately, however, the Court does not find these deficiencies fatal to warrant validity.[5] As stated by the Sixth Circuit, "[t]he appropriate analysis . . . is 'the adequacy of what [the affidavit] does contain, not on what it lacks, or on what a critic might say should have been added.'" *Dyer*, 580 F.3d at 391 (quoting *Allen*, 211 F.3d at 975). Detective Lacy's affidavit is not a model affidavit. The information it provides may be described as "scant." *See Moore*, 661 F.3d at 313. The reviewing judge was not required to issue the warrant and would have been within his "discretion to demand more" information. *See id.* However, Lacy's affidavit also is not a "conclusory affidavit,"

---

who knows or expects that police will review exactly what occurred on the objective record.

[5] The failure to name the drugs involved is both unusual and perplexing. During the oral argument hearing, the Government's attorney conceded that he has never seen an affidavit that failed to identify drug type. Still, Detective Lacy clearly observed the drugs after the controlled buy. The issuing judge thus reasonably could have concluded that Lacy, based on his law enforcement experience, was familiar with the appearance of and could identify by observation controlled substances. *See United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993). *See also United States v. Sonaike*, 2013 WL 1688355, at *1-*4 (E.D. Mich. Apr. 18, 2013) (Defendant argued affidavits insufficient based in part on the failure to identify the type of drugs involved; the court found that the existence of probable cause was a close call, but ultimately determined that exclusion was not warranted regardless); *United States v. Martin*, 526 F.3d 926, 930 (6th Cir. 2008) (CI did not identify the type of drugs involved, but law enforcement conducted a trash pull and found cocaine residue). The Court observes that Lacy is chronologically quite experienced, and the affidavit addresses street dealing of drugs. While many circumstances could make a drug "illegal," the context here reasonably implicates drugs trafficked in the manner the controlled buy depicts. Further, the specifics of the transaction – including the furtive actions of Barker, support illegality of the substance dealt.

Further, cases validate reference to "illegal drugs" as sufficiently particular under the Fourth Amendment. *United States v. Newsome*, 504 Fed. App'x 463, 466 (6th Cir. 2012).

which the Sixth Circuit defines "as one which states only the affiant's belief that probable cause existed." *Finch*, 998 F.3d at 352 (citation and internal quotation marks omitted). Nor is it a "bare bones" affidavit that "states suspicions, beliefs, or conclusions, without providing *some* underlying factual circumstances regarding veracity, reliability, and basis of knowledge[.]" *Weaver*, 99 F.3d at 1378 (emphasis added). The information it contains, including a tip from a confidential informant and a controlled (and likely recorded) drug buy[6] within twenty-four hours of warrant issuance, "is enough to establish a 'fair probability' that evidence of a crime w[ould] be located on the premises of the proposed search." *See Moore*, 661 F.3d at 313. Under the totality of the circumstances, probable cause supported the warrant to search Barker's residence. There is a limit to the sequence or number of inferences a court can or should supply.[7]

    **C.    Even assuming probable cause does not support the search warrant, the facts do not warrant exclusion of recovered evidence.**

Even if probable cause did not support the warrant, the exclusionary rule would not apply on this record to bar admission of the seized evidence at trial. The Supreme Court has repeatedly stated that suppression is not an automatic result of a Fourth Amendment violation. *See Herring v. United States*, 129 S. Ct. 695, 700 (2009) ("The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies.") (citing *Gates*, 103 S. Ct. at 2324); *see also United States v. Master*, 614 F.3d 236, 242 (6th Cir. 2010). Indeed, three decades ago, in *United States v. Leon*, 104 S. Ct. 3405 (1984), the Supreme Court articulated a good faith exception to the exclusionary rule. *See Leon*, 104

---

[6] Lacy's use of the term "control purchase" creates a plausible inference that Lacy assured the CI directly exchanged buy money for drugs under objectively verifiable circumstances. Details would be helpful, but the language casts a fair inference here.
[7] This warrant tests and likely approaches that limit.

15

S. Ct. at 3420-21. Specifically, the Court held that suppression is not an appropriate remedy where police conduct a search in good faith pursuant to a warrant later declared invalid, except in the following circumstances: (1) where the issuing judge was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) where the issuing judge wholly abandoned his judicial role and acted merely as a rubber stamp for the police; (3) where the affidavit is so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable; or (4) where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 3421.

In recent decisions, the Supreme Court has refined its analysis to broaden *Leon*'s application. *See United States v. Davis*, 690 F.3d 226, 251-53 (4th Cir. 2012); *Master*, 614 F.3d at 241-42. In *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011), for example, the Supreme Court explained that "[t]he [exclusionary] rule's sole purpose . . . is to deter future Fourth Amendment violations." Thus, according to the Court, "[w]here suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" *Id.* at 2426-27 (citing *United States v. Janis*, 96 S. Ct. 3021, 3032 (1976)). The Court further explained that while "[r]eal deterrent value is a 'necessary condition for exclusion,' . . . it is not 'a sufficient' one." *Id.* at 2427 (citing *Hudson v. Michigan*, 126 S. Ct. 2159, 2166 (2006)). The Court noted that exclusion exacts substantial social costs, as it "almost always requires courts to ignore reliable, trustworthy evidence . . . . And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment." *Id.* (internal citation omitted).

Accordingly, the Court held that "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Id.* In doing so, as recognized by the Sixth Circuit, the Supreme Court has "effectively created a balancing test" for determining whether evidence must be suppressed as a result of a Fourth Amendment violation. *Master*, 614 F.3d at 243; *United States v. Fugate*, 499 F. App'x 514, 519 (6th Cir. 2012).

In considering the deterrent benefits of exclusion, the Supreme Court has directed lower courts to focus on the culpability of the law enforcement conduct at issue. *Davis*, 131 S. Ct. at 2427 (citing *Herring*, 129 S. Ct. at 701). Where the police have acted with "'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* (citing *Herring*, 129 S. Ct. at 702); *see also Herring*, 129 S. Ct. at 702 ("[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."). Where police "conduct involves only simple, 'isolated' negligence," *Davis*, 131 S. Ct. at 2427-28 (citing *Herring*, 129 S. Ct. at 698), however, or where police have acted "with an objectively 'reasonable good-faith belief' that their conduct is lawful," *id.* at 2427 (citing *Leon*, 104 S. Ct. at 3413), the remedy of exclusion is not warranted. *Id.* at 2427-28. As succinctly summarized by the Supreme Court in *Herring*, "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." 129 S. Ct. at 702.

Although the Court stays within the four corners of the affidavit in reviewing a warrant for probable cause, the Court is not necessarily so limited in conducting the good

faith analysis. Per *Frazier*, "a court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and revealed to the issuing magistrate." *Frazier*, 423 F.3d at 535-36. Here, that information includes the second warrant affidavit for the mobile home located on the Nada Tunnel Road property, as Lacy signed and tendered both applications at the same time, and the judge issued both warrants simultaneously.[8]

As conceded by the defense during oral argument, Detective Lacy's conduct in seeking separate warrants for separate buildings located at the same residential address shows some level of care and diligence. Stated otherwise, Lacy's decision to seek separate warrants for the two buildings does not display deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights. The two affidavits are not identical,

---

[8] The Court notes that it *may* be permissible to consider both affidavits in determining whether probable cause existed for the search of Barker's two-story residence. In *United States v. Nolan*, 413 F.2d 850, 853 (6th Cir. 1969), the Sixth Circuit noted that "[t]he United States Supreme Court has never squarely decided whether or not, when one of two contemporaneously filed affidavits is attacked, the evidence supplied by the other can be considered as support for the Commissioner's finding of probable cause for the warrant under attack." The Sixth Circuit went on to find that on the facts of the case before it, "consistent with the Fourth Amendment[,] the facts supplied . . . by both affidavits could be taken into account . . . in determining probable cause in relation to each." *Id.*; *see also United States v. Dudek*, 560 F.2d 1288, 1292-93 (6th Cir. 1977) (citing *Nolan* for the proposition that "[t]he facts supplied by both of these affidavits, simultaneously filed and considered by the magistrate, could be taken into account by him in determining probable cause as to each affidavit[]"). The court further found that the issuing judicial officer's "failure . . . to include reference to both affidavits in the disputed warrant" did not require invalidation of the warrant. *Id.*; *see id.* at 853-54. In a more recent case, the Western District of Pennsylvania concluded that "ample authority" exists for the proposition that the sworn statements in multiple affidavits relating to the same criminal investigation may be considered in reviewing a warrant for probable cause. *United States v. Abdul-Ganui*, 2010 WL 5279948, at *6-7 (W.D. Pa. Dec. 14, 2010). The parties did not argue this point. Although the Court does not find a review of the mobile home affidavit necessary to a finding of probable cause to search the two-story building, the additional information included in the mobile home affidavit, namely the earlier controlled drug purchase from Barker by the CI on May 16, 2011, bolsters the credibility of the CI, provides additional corroboration for the CI's information, and therefore strengthens the probable cause determination with respect to Barker's residence.

establishing that Lacy prepared each thoughtfully and independently. As noted previously, Lacy did not rely entirely on boilerplate language or pre-printed forms. Further, the detective's decision to conduct multiple controlled drug purchases, rather than seeking a warrant based solely on the CI's statement that Barker was knowingly trafficking illegal drugs, similarly demonstrates a level of care and restraint.

In sum, although the defense may raise fair criticisms of the verbiage and thoroughness of Detective Lacy's papers, all the evidence indicates that the affiant acted with an objectively reasonable, good-faith belief that his conduct was lawful. After all, the Circuit Judge processed and validated the submissions, and Lacy should be able to rely on that imprimatur in this context. Any deterrent benefits of suppression therefore would be minimal, and they would not outweigh the heavy costs of exclusion on the justice system and society at large. Accordingly, exclusion should not apply.

### III.     Recommendation

For the reasons stated, the Court **RECOMMENDS** that the District Judge **DENY** Barker's pending motion to suppress (DE #14).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. In light of the approaching pretrial conference and trial, the Court **ORDERS** the parties to file any objections **on or before June 9, 2014**. The parties should consult the aforementioned statute and Federal Rule of Criminal Procedure 59(b) for specific appeal rights and mechanics. Failure to object in accordance with the rule waives a party's right to review.

This the 2d day of June, 2014.


Signed By:
*Robert E. Wier*     REW
United States Magistrate Judge